[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 249 
The ground upon which the Comptroller placed his refusal to do the act required, was, that the act of March, 1858, authorizing it, was in conflict with the 9th section of article VII of the Constitution of this State, and therefore void. That section of the Constitution declares that the credit of the State shall not, in any manner, be given or loaned to or in aid of any individual, association or corporation. The Constitution was adopted in 1846, and by the 17th section of article I, it was declared that such acts of the legislature of the State *Page 250 
as were then in force, should be and continue the law of the State, subject to such alterations as the legislature should make concerning the same. The operation of the Constitution was therefore wholly prospective.
The Comptroller's refusal rests on the assumption that the act of 1858 was a loaning of the credit of the State to the Long Island Railroad Company, and unless that assumption be correct, he is without excuse.
To determine this question, it is necessary to ascertain the duration of the loan as authorized by the act of 1840. The argument of the Attorney-General is, that by the true construction of the statute, it falls due on the 1st day of August, 1861; that the words "at the pleasure of the legislature," contained in the act, are mere surplusage, and that such has been the uniform construction given to acts containing similar provisions by the State officers. I cannot concur in that construction. In construing a statute, it is the duty of the court, if possible, to give force and effect to every word used, if it can be done without a violation of the organic law. The words employed are to be understood according to their natural signification and import. When the words are plain and clear, and their sense distinct and perfect, there is generally no necessity to resort to any constructive means of interpretation. There is no room for construction. The words themselves declare the meaning of the instrument, and courts have no right to add to, or take away from, that meaning. (3 Seld., 97.) In this case, the words used are plain and clear; they embody a meaning precise and distinct, and that meaning cannot well be misunderstood. Taking the language of the act, and giving to every word its full force, according to its most common and popular signification, the intention of the legislature is plain and clear — it makes the stock reïmbursable at the pleasure of the legislature after twenty years from its issue. No other construction can be given to the act, unless a part of its words are omitted. To give it the construction contended for by the defendant, the words "at the pleasure of the legislature at any time after," would have to be erased. I cannot *Page 251 
think those words were inserted by the legislature without a purpose, and that purpose was, as hereinbefore stated, to vest in the legislature the power to fix the time for the reïmbursement of said stock, after a period of twenty years from their issue.
The conclusion of the court below, that the act of 1858 was not a loan of the credit of the State, was therefore correct. The credit of the State had been previously loaned. The stock had a valid existence, its holders were the legal creditors of the State, yet they could not call for its redemption until after the expiration of twenty years from its issue; nor then until the legislature should fix a period for its payment. The statute of 1858 was enacted for that purpose, and it designated two periods when the stock might be redeemed, one present, the other future, leaving the option of accepting the one or the other with the holders of the bonds, if that option was made manifest within the period limited by the act.
Of the power of the legislature to do this, I have no doubt. The whole law-making power is vested in the legislature, which is omnipotent, unless restricted by the express or implied provisions of the Constitution. It is for those who claim that a statute is unconstitutional to show that it is forbidden. The section, which it is claimed prohibited the enactment of 1858, does not reach the case. Had this act simply declared that the bonds in question should become due in 1876, the option being with the legislature, no one would have deemed it a loan of the credit of the State. If it were, fixing any period after the lapse of twenty years from the issue of the bonds, would be equally void; and thus the option vested in the legislature by the act of 1840, entirely defeated. Fixing two periods instead of one for the redemption of the bonds, with the conditions given to the holders, did not change the nature of the act, nor render the law for that reason unconstitutional.
It is true, that the original loan, if the holders so elect, may, under the act of 1858, continue fifteen years after the first twenty years have expired, and so it might had not *Page 252 
the act of 1858 been passed. The option was with the legislature, and it had the power, either by affirmative or negative acts, to allow the loan to run; and having seen fit to act affirmatively in the matter, the act is not without the limits of the Constitution, nor the law invalid.
I fully agree with the learned Attorney-General that "the whole scope and object of the seventh article of the Constitution was to pay the public debt at the earliest practicable period, and to extricate the State from its liabilities, incurred for the benefit of corporations," and I trust that the object will never be departed from. Although it may be that the legislature in fixing a day so remote for the redemption of these bonds, has acted unwisely, and departed from the intent of the framers of the Constitution, in allowing the credit of the State to be continued for the benefit of the corporation; still the power being vested in that body, its unwise exercise affords no ground for the courts to nullify it.
In my judgment, the act of 1858 was constitutional, and the Comptroller should have indorsed the bonds presented to him for that purpose, as required by the provisions of the act.
The order must be affirmed, with costs.
DAVIES, J., did not hear the argument; all the other judges concurring,
Judgment affirmed.