THE COLLIER ESTATE v. WESTERN PAVING & SUPPLY COMPANY, Appellant; KAUFFMAN v. WESTERN PAVING & SUPPLY COMPANY, Appellant.

In Banc, March 9, 1904.

1. STREET IMPROVEMENT: "Fronting and Adjoining." Where the charter says that taxes for the improvement of streets shall be levied upon "ground fronting upon or adjoining the improvement," the words mean the main street upon which the lot fronts and the side street which the lot may adjoin.

2. ———: ———: Depth of Lot. Where such words are used in reference to the front-foot assessment, the amount of the assessment is the same whatever may be the depth of the lot.

3. ———: Amendment of Charter: Assessment by Area. The amendment to the charter of St. Louis has wrought an innovation as to three-fourths of the costs of a street improvement, by subjecting the area of the improved property to its payment.

4. ———: ———: Area: Amount Assessable. Under the amended charter only one-half of an unplatted block lying between parallel

Collier Est. v. Western Pav. & Supply Co.

streets can be subjected to an improvement of one of the streets at a time.

5. ———: ———: ———: **Determining Area.** The mode of determining the area to be assessed is pointed out by the charter. The area or district, if the property is not divided into lots, extends to a line midway between the street on which the parcel of ground fronts or adjoins, and the next parallel street. It can not be made to extend to the next street.

6. ———: ———: ———: ———: **Exception.** An exception to this "midway line" is contained in the charter, which provides that "if the property adjoining the street to be improved is divided into lots, the district line shall be so drawn as to include the entire depth of all lots fronting on the street to be improved," and the charter says that "the word 'lot' as used in this connection shall be held to mean the lots as shown by recorded plats of additions or subdivisions, but if there be no such recorded plat, or if the owners of the property have disregarded the lines of lots as platted and have treated two or more lots or fractions thereof as one lot, then the whole parcel of ground or lots so treated shall be regarded as a lot." *Held,* that the entire depth of the whole block, which had been used as one lot by disregarding the division lines of the lots, can not be burdened with three-fourths of the cost of an improvement on a street adjoining such street on the side, but the words "fronting on the street to be improved" refer to the street on which the buildings front.

7. ———: ———: **Meaning of Words.** The words "fronting," and "adjoining" and "abutting," as used in the charter, are not synonymous, for it is apparent from a careful reading of the charter that they were not intended to be used in the same sense.

8. ———: ———: **What is a Street.** The word "street," as used in the amended charter, means a public street. It does not mean a private way whose title is vested in trustees for the use of certain property owners, although those owners may have permitted other citizens to walk or drive over it for more than ten years. And although said private way may appear on the recorded plat, yet if there is an indorsement that it is reserved to the use of the property owners, that indorsement negatives any intention of its dedication to public use.

9. ———: **Private Way: Midway Line.** The "midway" line which the charter calls for as the line of the assessable district does not mean the line midway between the street to be improved and a private way, but midway between the street to be improved and the next parallel public street. And taxbills against

the property based on the private way as the next parallel street are void.

10. ———: **Unauthorized Line: Estoppel.** The property-holders have no time or place to object to the unauthorized manner of including ground within the assessable district, prior to the issue of the taxbills, and hence they are not estopped to have the bills declared invalid on the ground that the district was not laid out as the charter directed.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

AFFIRMED.

*Finkelnburg, Nagel & Kirby* and *Adiel Sherwood* for appellant.

(1)    There is no equity in the bill. If the statements in the bill are true, plaintiffs have a full and complete right to make every defense at law in a suit upon the taxbills, and there is no necessity to ask equitable interference. Michael v. St. Louis, 112 Mo. 614; McClanahan v. West, 100 Mo. 323; Albany Mining Co. v. Auditor, 37 Mich. 393; Winter v. City Council, 9 So. 366; Page v. St. Louis, 20 Mo. 142; Heywood v. Buffalo, 14 N. Y. 506; McCormack v. Patchin, 53 Mo. 33. A court of equity will not interfere with an assessment, unless in addition to illegality, etc., plaintiff brings his case clearly within some recognized head of equity jurisdiction. Beach, Pub. Corp., sec. 1200; Railroad v. Cheyenne, 113 U. S. 525. A court of equity has no jurisdiction unless allegations of fact are contained in the petition and its jurisdiction can be shown only by facts which can be denied. Clark v. Ganz, 21 Minn. 387; Duck v. Peeler, 74 Tex. 268; Gas. Co. v. Higby, 25 N. E. 660; Shelton v. Platt, 139 U. S. 596. (2)    What property shall be included in an improvement district, and how the cost of the improvement shall be assessed, that is *ad valorem,* by the front foot,

according to benefits, or upon an area basis, or by a combination of several plans, are questions for the Legislature and not for the courts.   Fallbrook Irrig. Dist. v. Bradley, 164 U. S. 112; Webster v. Fargo, 181 U. S. 394; Shumate v. Heman, 181 U. S. 402; Farrell v. West Chicago P. Co., 181 U. S. 404; Wormley v. Dist. of Columbia, 181 U. S. 402; French v. Barber Asphalt Pav. Co., 181 U. S. 324; Tonawanda v. Lyon, 181 U. S. 339; Cass Farm Co. v. Detroit, 181 U. S. 396; Carson v. Brockton Sewerage Com., 182 U. S. 398; Prior v. Buehler & Cooney Const. Co., 170 Mo. 451; Heman v. Schulte, 166 Mo. 409.   (3)  The true test of the validity of an act or city charter is whether all persons under like circumstances and conditions are treated alike in its operation.   Magoun v. Bank, 170 U. S. 283; American Sugar Ref. Co. v. Louisiana, 179 U. S. 89; Cotting v. Kansas City Stock Yards Co., 183 U. S. 79; Railroad v. Ellis, 165 U. S. 150; Clark v. Kansas City, 176 U. S. 114; Consolidated Coal Co. v. Illinois, 185 U. S. 203; Clark v. Titusville, 184 U. S. 329; Plessy v. Ferguson, 163 U. S. 537; Townsley v. Anderson, 171 U. S. 101; State ex inf. v. Ins. Co., 150 Mo. 135; Chappell & F. Co. v. Sulphur Mines Co., 172 U. S. 474.   (4)   Lake avenue is properly made the western boundary of the improvement district from Lindell avenue to the southern line of the lots on the north side of Portland Place, and thence north to Delmar avenue.   Lake avenue has been free, open and unobstructed for the use of the public for more than ten years, and the ground included therein has been used as a street by wagons and teams and for pleasure driving, and the sidewalks parallel thereto by pedestrians.   Certainly fifteen years of use shows an acceptance of the dedication, and in addition numerous conveyances of land on both sides of Lake avenue have used Lake avenue as a boundary thereof.   In addition a plat of Forest Park Addition shows Lake avenue as a highway, and this plat was filed under the provisions of the old charter,

showing the intention to give the public the use thereof. Buschman v. St. Louis, 121 Mo. 523; Heitz v. St. Louis, 110 Mo. 618; Moses v. St. Louis Sectional Dock Co., 84 Mo. 242; Gamble v. St. Louis, 12 Mo. 617; Hannibal v. Draper, 15 Mo. 640; Longworth v. Sederic, 165 Mo. 221; Whyte v. St. Louis, 153 Mo. 80. (5) Plaintiffs are estopped to maintain these suits. They had knowledge of the commencement of the proceedings and of each step taken during the passage of the ordinance, the advertisement for bids, the awarding of the contract, the confirmation of the contract, and the beginning and prosecution and completion of the work. The work was commenced under the contract on July 26, 1902, and completed on October 27, 1902, and these suits were not filed until February 13 and February 14, 1903. It is admitted that plaintiffs stood by in silence and without objection or protest allowed the work to proceed, and did nothing except institute these suits. The lines of the improvement district are set forth in the ordinance under which the work was done, and plaintiffs, therefore, had full knowledge from the time the ordinance was introduced in the Municipal Assembly of the intention of the city authorities to assess their property for taxation to pay their proportionate part of the cost of the improvement and to assess that property in the manner in which it was afterwards assessed. Plaintiffs should not now be permitted to contest the validity of the assessment so made. Planet Property Co. v. Railroad, 115 Mo. 626; Hellenkamp v. City of Lafayette, 30 Ind. 192; Palmer v. Stumph, 29 Ind. 329; Lafayette v. Fowler, 34 Ind. 146; Jackson v. Smith, 22 N. E. 432; Gibson v. Owens, 115 Mo. 258; Ritchie v. South Topeka, 38 Kan. 374; Warren v. Barber Asphalt Pav. Co., 115 Mo. 580; Huling v. Bandera Flag Stone Co., 87 Mo. App. 360; Traphagen v. Mayor, 29 N. J. Eq. 209; Easton v. Railroad, 9 C. E. Green (N. J.) 57; Powers v. New Haven, 120 Ind. 185; Skinker v. Heman, 148 Mo. 349; Elliott on Roads & Streets (2 Ed.), sec.

590; Warren v. Barber Asphalt Pav. Co., 115 Mo. 580; Gibson v. Owens, 115 Mo. 567; Heman v. Ring, 85 Mo. App. 231; Barber Asphalt Pav. Co. v. Hezel, 76 Mo. App. 135 (155 Mo. 391). (6) In assessing real estate for local improvements the words "fronting upon," and "adjoining," "abutting" and "fronting" are used interchangeably and as synonyms. In re Ward, 52 N. Y. 397; State v. Railroad, 43 N. J. L. 112; Holt v. Somerville, 127 Mass. 408; Wolf v. City of Keokuk, 48 Iowa 132; Des Moines v. Dorr, 31 Iowa 93; Springfield v. Green, 120 Ill. 275; Wilbur v. Springfield, 123 Ill. 401; Byram v. Foley, 17 Ind. App. 637; Coburn v. Bassert, 13 Ind. App. 35; City of Lawrence v. Killam, 11 Kan. 511; Michener v. Philadelphia, 118 Pa. St. 538; Justices of Bedfordshire v. Comrs. of Bedford, 7 Wels. H. & G. (Exch.) 657; Newport Urban Sanitary Authority v. Graham, 9 L. R. Q. B. (1881), 183; Hughes v. Railroad, 130 N. Y. 26; People ex rel. v. Adams, Comptroller, 45 N. Y. 270; Rex v. Hodges, 1 Moody & Malkins 341; Moberly v. Hogan, 131 Mo. 19; Seibert v. Tiffany, 8 Mo. App. 33; Allen v. Krenning, 23 Mo. App. 561; Walton v. Railroad, 67 Mo. 58. A tract or lot of ground has as many "fronts" as it has sides located on different streets, i. e., a square of land fronts on four streets, a half block on three streets, and a corner lot on two streets. People ex rel. v. Adams, Comptroller, supra; Elliott, Roads and Streets (2 Ed.), sec. 555, p. 575; Cooley, Tax. (3 Ed.), p. 1222; 2 Dillon, Mun. Corp. (4 Ed.), p. 915, note; Newport Urban Sanitary Authority v. Graham, 9 L. R. Q. B. (1881), 183; Justices of Bedfordshire v. Comrs. of Bedford, 7 Wels. H. & G. (Exch.) 657; City of Lawrence v. Killam, 11 Kan. 511; Byran v. Foley, 17 Ind. App. 637; Coburn v. Bossert, 13 Ind. App. 359; Wilbur v. Springfield, 123 Ill. 401; Springfield v. Green, 120 Ill. 274; Des Moines v. Dorr, 31 Iowa 93; Morrison v. Hershire, 32 Iowa 279; Wolf v. City of Keokuk, 48 Iowa 132; Moberly v. Hogan, 131 Mo. 25; Seibert v. Tiffany, 8 Mo. App. 33; Allen v.

Krenning, 23 Mo. App. 561; Wolfert v. St. Louis, 115 Mo. 139; Meyer v. Covington, 103 Ky. 545. (7) Independent of statute or charter provision requiring it, a tract of ground (whether consisting of several lots, as shown by plats or not), may be assessed for a street improvement on one side of it where the owner thereof uses it as a whole, and this may be shown by the absence of division lines, by the location of buildings, or by any other appropriate evidence; and it is sufficient if the statute or charter provide for the assessment of property benefited. City to use v. Cottage Co., 9 Phila. 84; McKeesport v. Sales, 178 Pa. St. 363 (35 Atl. 927); City of Chester v. Eyre, 181 Pa. St. 642 (37 Atl. 837); City to use v. Cadwallader, 22 W. N. C. 8; Davis v. Point Pleasant, 32 W. Va. 295 (9 S. E. 230); Wolfort v. St. Louis, 115 Mo. 144; Kemper v. King, 11 Mo. App. 128; Construction Co. v. Loevy, 64 Mo. App. 437; State ex rel. v. Essex Public Road Board, 51 N. J. L. 170; Fitzgerald v. Thomas, 61 Mo. 499.

*Edward S. Robert, George C. Hitchcock* and *William E. Baird* for respondents.

(1) By the charter of the city of St. Louis a taxbill is made a lien on the property against which it is issued, and is *prima facie* valid and correct as to the rate or price and the amount thereof. Art. 6, sec. 25, charter. (2) Such taxbill, if invalid, constitutes a cloud on respondents' title which equity will remove. Lockwood v. St. Louis, 24 Mo. 20; Fowler v. St. Joseph, 37 Mo. 228; Leslie v. St. Louis, 47 Mo. 474; Merchants' Bank v. Evans, 51 Mo. 335; Verdin v. St. Louis, 131 Mo. 26; Hassan v. City of Rochester, 67 N. Y. 528; Ellwood v. City of Rochester, 122 N. Y. 229; Ankeny v. Minneapolis, 20 Minn. 477; Sewall v. St. Paul, 20 Minn. 511. (3) The principle on which these charter provisions should be interpreted is that the property benefited by

an improvement should bear the burden, and each person should contribute in proportion to the benefit received.   Lockwood v. St. Louis, 24 Mo. 22; Newby v. Platte County, 25 Mo. 258; Kansas City v. Bacon, 157 Mo. 450.   (4) What property is benefited under a law relating to local improvements must be determined from an interpretation of the law as a whole, always taking into consideration the foregoing principle and the purpose and object for which such law was passed.   Neenan v. Smith, 50 Mo. 525; Suth. Stat. Const., secs. 239, 240. (5)   If the district as established is correct, then section 14 of article 6 of the charter is unconstitutional and void, in that it denies to respondents the equal protection of the laws, and therefore violates the provisions of section 1 of article 14 of the amendments to the Constitution of the United States.   Barbier v. Connally, 113 U. S. 27; Railroad v. Matthews, 174 U. S. 96.   (6) A valid classification must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is made, and can never be imposed arbitrarily and without any such basis.   Railroad v. Ellis, 165 U. S. 165; State v. Loomis, 115 Mo. 314; Railroad v. Penn., 134 U. S. 232; Yick Wo v. Hopkins, 118 U. S. 356; Railroad v. Moss, 60 Miss. 641; Wilder v. Railroad, 70 Mich. 385; Railroad v. Williams, 49 Ark. 492; Frorer v. People, 141 Ill. 171.

GANTT, J.—The two above causes were heard together and submitted on the same briefs.   The proceeding in each is a suit in equity to set aside and annul a special taxbill assessed against the respective real estate of the plaintiffs for the improvement of King's Highway Boulevard, a public thoroughfare in the city of St. Louis.

The bill in each case alleges that the assessment is erroneous and greatly in excess of what it should be; that said taxbill is a lien on all of the plaintiff's said property and is a cloud upon plaintiff's title.

''The validity of said assessment is questioned on two grounds:

''(1)    That the district, on which said assessments are based, was not established in accordance with the provisions of section 14, article 6, of the amended charter of the city of St. Louis.

''(2)    That if said district was established in accordance with said section 14 of article 6, then said section 14 of said article 6 is void, and it violates section 1, article 14 of the amendments to the Constitution of the United States in two particulars, to-wit:

''(a)    By denying to respondents the equal protection of the laws by subjecting all of the respondents' said property to the lien of said assessment and in not subjecting other land adjoining King's Highway Boulevard, and similar in location to respondents' property, in respect of said King's Highway, the street to be improved, to the lien of a like assessment for its pro-rata share of three-fourths of the cost of said improvements.

''(b)    By making an illegal, unreasonable, unjust and unconstitutional classification of property by dividing the same into lots, as shown by recorded plats of additions and subdivisions, and into lots of property, which have not been so platted or recorded, whereby respondents' entire property has been unjustly charged with a part of three-fourths of the cost of said improvement, and approximately only one-half of other blocks of ground, similar in size and location to respondents' said property in respect of said King's Highway, the street to be improved, has been charged with a part of said three-fourths of the cost of said improvement.

''The property of the Collier Estate is situated in City Block No. 3881 of the city of St. Louis. Said block is bounded on the west by King's Highway Boulevard, the street to be improved, on the east by Euclid avenue, the street next parallel to King's Highway Boulevard

on the east, on the south by Maryland avenue, on the north by Berlin avenue. The northern half of said block is owned by a number of different persons, who have improved their respective parcels of ground by the erection of residences, all of which front on Berlin avenue for a distance of some eight hundred and seventeen feet. The southern half of said block No. 3881 is the property of the Collier Estate and is vacant and unimproved. It has a front on Maryland avenue of about eight hundred and seventeen feet, a depth of two hundred and twenty-five feet on King's Highway Boulevard, the street to be improved, and said Euclid avenue respectively.

"No part of the property situated in either the northern or southern half of said block number 3881 has been divided into lots, in additions or subdivisions and a plat thereof filed in the office of the recorder of deeds of the city of St. Louis as provided by article 6, section 1, of the Scheme and Charter of the city of St. Louis, previous to the amendment of October, 1901.

"The property of the respondent Kauffman is situated in the western part of the city of St. Louis and constitutes said block number 3882. Said block is bounded on the west by King's Highway Boulevard, the street to be improved; on the east by Euclid avenue, the street next parallel to King's Highway Boulevard on the east; on the south by Lindell Boulevard and on the north by Maryland avenue. This ground has been improved by the erection of a residence and outbuildings upon the western half thereof; the buildings face toward the south upon Lindell Boulevard and the natural front of the property is upon that street, the entrance to and exit from said property being upon Lindell Boulevard. The ground has never been subdivided into lots by filing and recording a plat thereof in the office of the recorder of deeds of the city of St. Louis in plat-books provided for that purpose, as provided by

article 6, section 1, of the Scheme and Charter of the city of St. Louis."

The complaint of the Collier Estate is that the entire south half of City Block 3881 is included in the area assessment for the purpose of paying for three-fourths of the cost of the improvement of King's Highway, and that only the western half of the southern half of City Block 3881 should have been included within the area assessment for that purpose.

The complaint made by the Kauffmans is that all of City Block 3882 was included in the area assessment for the purpose of raising three-fourths of the cost of improvement of King's Highway, and that only the western half of that city block should have been included within the present area assessment.

The petitions in both cases refer to the fact that in fixing the line of the improvement district in the northern half of said City Block 3881, the eastern line of the improvement district in said northern half of City Block 3881, is drawn midway between King's Highway and Euclid avenue, and that the same thing is done in the next block thereof; that is, in City Block 3880.

Complaint is made in both cases that the improvement district line west of King's Highway and extending north from Lindell avenue to the north line of Portland Place should have been drawn midway between King's Highway and Union avenue, instead of between King's Highway and Lake avenue; this claim is founded upon the allegation that Lake avenue is not a street within the meaning of the charter amendments, but, on the contrary, is a private undedicated way, usable only by the private owners of property in Westmoreland and Portland Places and not open as a public way to the public and not dedicated to public use.

The improvement of King's Highway was accomplished under ordinance No. 20643, and the Western Paving & Supply Company, the appellant, was the lowest responsible bidder, and after a contract had been

entered into in strict accordance with the provisions of the St. Louis charter, the work was done by the contractor and completed and accepted by the proper city officers and taxbills issued to the contractor.

The work was commenced on July 26, 1902, and completed on October 27, 1902.

The Kauffman suit was filed on February 14, 1903, and the Collier Estate suit on February 13, 1903.

The answers count on the doing of the work, its completion, the issuance of the taxbills, and pray for affirmative judgments and enforcement of the taxbills. A plea of estoppel by allowing the work to proceed with full notice. Next, that the plaintiffs have treated their property in each case as one lot, and that it is assessable as such by their manner of using them. Denies any violation of the 14th amendment to the Constitution of the United States.

There is practically no dispute as to the controlling evidence. The questions presented require a solution of the proper method of establishing the benefit district under section 14, article 6, of the amended charter of St. Louis.

Prior to these amendments, assessments for special benefits arising from street improvements were made on the linear or front foot rule. The relevant parts of section 14, article 6, of the amended charter, so far as they affect this case, are as follows:

"Special taxes for the improvement of streets, avenues, and public highways shall be levied and assessed as follows: The total cost of grading, etc., . . . shall be ascertained, and one-fourth thereof shall be levied and assessed upon all the property fronting upon or adjoining the improvement, in the proportion that the frontage of each lot so fronting or adjoining bears to the total aggregate of frontage of all lots or parcels of ground fronting upon or adjoining the improvement, and the remaining three-fourths of the cost so ascertained shall be levied and assessed as a

special tax upon *all the property in the district* to be defined and bounded as hereinafter provided, in the proportion that the area of each lot or parcel of ground or the part of such parcel *of ground* lying within the district bears to the total area of the district, exclusive of streets and alleys.''

It will be observed that by this charter amendment the total cost of the improvement is first to be ascertained.   Two methods then are provided for its payment.   *One-fourth* of the total is to be assessed according to the frontal rule, and the provision as to this is so clear that no doubt can arise as to its meaning. The words, ''fronting upon or adjoining the improvement,'' cover all contingencies, the improvement of main streets, by which is meant those streets on which a lot or parcel of ground may *front* and side streets on which a lot or parcel of ground may *adjoin*.

No attempt is made in the charter to say *to what depth* property ''fronting upon or adjoining the improvement'' shall be liable for the one-fourth of its share of the cost but leaves that question to be determined by accident in each case depending upon the size or depth of the given lot ''fronting upon or adjoining the improvement.''   The result of this provision to the property owner is that the amount of his pro-rata assessment in respect of one-fourth of the cost of an improvement is the same whether his lot be large or small in depth.

The contractor for the same amount of work may have more land as a security in the one case than the other.   As to the one-fourth of the cost there is no dispute in these cases, as the plaintiffs offer and tender that amount.   But this amendment has wrought an innovation as to *three-fourths* of the cost by subjecting the *area* of the improved property to its payment.   By reference to the charter provision already quoted it will be observed that this three-fourths of the cost of an improvement ''shall be levied and assessed as a special

tax upon all the property *in the district to be defined and bounded as hereinafter provided,* in the proportion that the area of each lot or parcel of ground or the part of such parcel of ground lying within the district bears to the total area of the district, exclusive of streets and alleys.''

''The city officials can readily issue one taxbill, the frontage tax being a lien upon the entire parcel of ground fronting upon or adjoining the street to be improved and the pro-rata proportion of three-quarters of the cost will be a lien upon that portion of the parcel of ground located within the lines of the improvement district, but as the tax is severable we see no objection to issuing separate tax bills, one for the frontage or one-fourth tax, and the other for three-fourths or area tax.''

The benefit district must be established according to the charter provisions, and the lot or parcel of ground or the part of it to be subjected to the cost must lie in the district thus established, anything in an ordinance establishing a district to the contrary notwithstanding. The property to be subjected to the payment for such improvement may be either a ''lot'' or ''a parcel of ground,'' and the district may be so created or established that one of the lines of the district may be so drawn under the charter direction that only *''a part of a parcel of ground''* shall lie within the benefit district. It is at once apparent that it is an essential prerequisite to first determine *the assessment district* in order to ascertain what property of a given individual shall be subjected to the payment of three-fourths of the total cost. Turning now to the amended charter we find the mode of procedure for determining the district and area.

''The districts herein referred to shall be established as follows: A line shall be drawn *midway* between the street to be improved and the next parallel or converging street *on each side* of the street to be im-

proved, which line shall be the boundary of the district, except as hereinafter provided.''

We have here a general rule which ordinarily commends itself to reason and justice. Generally speaking city blocks are bounded by four streets: two running north and south, and two running east and west. This charter provision was designed to divide a block in such a way that one-half of it, whether fronting or adjoining an improvement, shall fall into an assessment district when each of these four streets shall be improved. The provision is simple and ordinarily susceptible of little or no difficulty. Given, ''a street to be improved,'' ''the next parallel or converging streets'' each side of which are controlling factors in fixing the boundaries of the benefit or assessment districts, the lines are to be drawn *midway* between ''the street to be improved,'' and ''the next parallel or converging street'' on each side of the street to be improved. Applying these directions to the district which constitutes the bone of contention in these cases, it is perfectly apparent that they have not been followed. King's Highway Boulevard is the street to be improved and for which taxbills were issued against plaintiff's property. It is admitted and shown by the plat in evidence that Euclid avenue is the next parallel street on the east to King's Highway Boulevard, and yet the eastern line of the district was not drawn *midway* between Euclid avenue and King's Highway, but said eastern line was drawn coincident with the western line of Euclid avenue and includes all of the property belonging to both of plaintiffs lying between Euclid avenue and King's Highway, whereas the charter provides that only the western half thereof should contribute to the cost of said improvement and unquestionably the assessment is illegal, *unless* the property of the plaintiffs was such as to require *the district* line to be drawn *in accordance with certain exceptions* to the above general rule. These exceptions are found in the following provision: ''If the property ad-

joining the street to be improved is divided into lots, the district line shall be so drawn as to include the entire depth of *all lots fronting on the street to be improved.* If the line drawn midway as above described would divide any lot lengthwise . . . and the average distance from the midway line so drawn to the nearer boundary line of the lot is less than twenty-five feet, the district line shall in such case diverge to and follow the said nearer boundary line.'' Unless the property adjoining the street to be improved is divided *into lots,* then neither of these exceptions can apply.

These exceptions were made to meet the condition, if the block is divided *into lots: first,* where the lots *front on the street to be improved; second,* where the lots *adjoin* a street to be improved and front on another street. In the first case, the district line shall not cut a lot into different parcels, *but shall include the entire depth of such lot fronting on the street to be improved.* In the second case the charter provides for a deviation from the midway line in the event that such midway line would divide any lot *lengthwise* or approximately lengthwise, and this can only occur in a case where a lot does not front on the street to be improved, but runs parallel with it; otherwise, the midway line could not divide it *''lengthwise.''* Now it is important to determine in the first case, whether plaintiffs' properties *front* on King's Highway within the meaning of the charter. There is no doubt that the word ''front'' may in some circumstances be interpreted to mean and include the word ''adjoin.'' Thus in Moberly v. Hogan, 131 Mo. 19, *''the front foot rule''* was held to apply to the side of a corner lot fronting or adjoining a side street. In that case *''the lot abutting''* on the street was made liable by the statute. But that was a construction of law providing for an assessment upon a linear basis and while that construction of the statute then under consideration was proper, that decision does not go to the length of holding that the words *''fronting*

*upon"* are *always* synonymous with "adjoining." The meaning of the words *"fronting upon"* sometimes may and does depend upon the exact phraseology of the law to be construed and the intent to be gathered from its different provisions.

No court has adhered more firmly to the rule of construction of legislative enactments, that it is "the intention of the law which must govern," than this court has. It is the first duty of a court to seek for the intent of the law-making body, and then give it that effect. [Railroad v. Gracy, 126 Mo. 472; State ex rel. v. County Court, 128 Mo. 427; Neenan v. Smith, 50 Mo. 525.] We think when the whole charter on this subject is read together it will appear that the framers of this section intended to distinguish between the property "adjoining" and lots "fronting" on the street to be improved. These reasons are forcibly and lucidly stated by the learned counsel for respondent as follows:

"First, from the language of the charter itself. It should be noted that throughout the charter, wherever an assessment for a street improvement is directed to be levied upon a linear basis, the phrases, 'fronting upon or adjoining' 'fronting upon or bordering on,' are constantly used. See second and fourth paragraphs of article 6, section 1. It should be noticed further that whenever an assessment for a sidewalk improvement is directed, the word 'abutting' is always used. Now, in the section of the charter here in dispute, the language used is that one-fourth of the cost shall be levied upon all property 'fronting upon or adjoining' the improvement. But in the next paragraph the language in regard to the three-fourths assessment is, 'If the property adjoining the street is divided into lots, etc., the line shall include the entire depth of all lots fronting upon the street.' This change in the language certainly is not meaningless. The presumption is that the language of the act has been carefully chosen and any change in phraseology is presumed to represent a

change in meaning. If no distinction has been intended, it is clear that the clause would have read, 'If the property ''fronting upon or adjoining'' the improvement be divided into lots, the line shall be drawn so as to include the entire depth of all lots fronting upon or adjoining the improvement.' On the contrary, the phrase has been divided and the only word 'fronting' is used in describing the property which shall be included in its entirety. It is clear that a distinction was intended and that the district line should include the entire depth of only such property as actually faces out upon the street improved. That is, property which has its principal exit to and entrance from that street. Unless this construction is adopted, either the word fronting or the word adjoining is superfluous, and to reach such a result would violate the fundamental rule of statutory interpretation that if possible some meaning must be given every word in an act. [Sutherland, Stat. Cons., p. 317, sec. 239, p. 319, sec. 240; City of St. Louis v. Lane, 110 Mo. 254; Warren v. Paving Co., 115 Mo. 572; People ex rel. v. Denniston, 23 N. Y. 247; People v. Burns, 5 Mich. 114.]

''A comparison of the laws as they stood before the amendments of 1901, with the language here used strengthens the view just expressed. Article 6, section 18, of the Scheme and Charter prior to this amendment, provided that the cost of street improvements should be assessed upon the 'adjoining property.' If the words, 'adjoining' and 'fronting' are synonymous, why should any change have been made in the language? In State ex rel. v. Hostetter, 137 Mo. l. c. 649, where a slight change in the phraseology of an act was discussed, the court said: 'Can there be any doubt as to the intended effect of such a change of the statute on the particular question before us? It is always allowable in interpreting statutes to consider the prior law as compared with the present, in endeavoring to reach the true intent of the Legislature which, when found,

is the spirit of the law that the courts should enforce.' [Carson-Rand Co. v. Stern, 129 Mo. 381; Andrew County ex rel. v. Schell, 135 Mo. 31.]

"Further, this construction is the only one which is in harmony with the principle upon which special assessments are based, viz., the equitable distribution of the cost with respect to the special benefit conferred upon each parcel of ground. Appellant's position leads to the unreasonable result that the entire area of property like respondents' must be assessed for each improvement, so that, whereas adjacent blocks would be assessed only *twice* upon their entire area for the improvement of *four* surrounding streets, respondents' block would be assessed *four* times. It is a matter of common knowledge that the improvement of the street in front of a parcel of ground confers a greater benefit upon the property than would an improvement upon a side or rear street. The facilities for approaching the property are increased and a corresponding increase in value is presumed to result, and undoubtedly this section was carefully framed to cover this particular point, for the old law made no distinction whatever between the fronts and sides of lots. And the language of the amendment stands in such striking contrast with the old section that the conclusion is inevitable that the framers of the amendment by the change of language and by offering a new scheme of assessment, intended to avoid the unjust results of the old law and effectuate a more equitable distribution of the cost of street improvement.

"Second. This construction is supported by another consideration not dependent upon the phraseology of the law. In State ex rel. v. Slover, 126 Mo. l. c. 661, the court said: 'It is familiar canon of construction that, in case of any uncertainty, a reasonable and beneficial meaning should be ascribed to a law, where its literal sense will fairly permit it. And the results and consequences of any proposed interpretation of a

statute may properly be considered as a guide to the probable intent of its language, when subject to construction.' To the same effect are: Spitler v. Young, 63 Mo. 42; State ex rel. v. Diveling, 66 Mo. 375; Pierson v. People, 79 N. Y. 424.

"Appellant's construction makes no distinction between 'fronting' and 'adjoining,' with the admitted result that if a parcel of ground is contiguous to the street improved for any distance whatever, be it ever so slight, the entire area of the ground must be included in the district and assessed for its share of three-fourths of the cost. In other words, appellant asserts in effect that if a parcel of ground adjoins a street a distance of five feet and runs back in an irregular shape so as to embrace an area of five acres, the entire five acres must be included in the area district, although the property may be improved and have its entrance and exit upon another street. Such a result we think was never intended because it would be unreasonable and utterly inconsistent with the principle upon which such assessments are made.

"The natural front of the Kauffman property is upon Lindell Boulevard; the buildings face upon that street, and the principal means of ingress and egress are by that street.

"As the Collier Estate's property is vacant, the manner in which it was laid out, and the use of the street on which its longest dimension is, must determine whether it 'fronts' on such street within the meaning of the charter or not. The length of the Collier Estate's property on Maryland avenue is 817 feet, as compared with a depth of 225 feet on King's Highway Boulevard and Euclid avenue, respectively. Maryland avenue is a street extending westwardly from Sarah street to King's Highway Boulevard six or more blocks in length. It is used for residences, nearly all of which front on Maryland avenue. The state, school and city taxes on this property are assessed against the Collier

Estate as having '817 feet 5 inches front on Maryland avenue by a depth of 225 feet.' It is apparent that the city regards this property as fronting on Maryland avenue. The houses erected on the northern half of said city block No. 3881, directly north of respondents' property, front on Berlin avenue, in view of which fact Maryland avenue is the only available front for residences, if erected on respondents' property. To hold otherwise in view of the foregoing facts would be unreasonable.''

In consideration of the foregoing premises, do the properties against which the taxbills in suit have been issued fall within either of the two exceptions?

As already seen, the first exception is, "If the property adjoining the street to be improved is divided into lots, the district line shall be so drawn as to include *the entire depth of all lots fronting* on the street to be improved." What is meant by "lots" in this exception must be determined by the charter provision on this subject. Section 14, article 6, defines a *lot* in these words: "The word 'lot' as used in this section, shall be held to mean the lots as shown by recorded plats of additions or subdivisions, but if there be no such recorded plat, or if the owners of the property have disregarded *the lines of lots as platted,* and have treated two or more lots or fractions thereof as one lot, then the whole parcel of ground, or lots so treated as one, shall be regarded as a lot for the purposes thereof.'' Applying this definition first to the Kauffman property, two views can be taken.

If the defendant's contention that Mrs. Kauffman has so used the whole of block 3882 as one lot by disregarding the division lines of the lots, conceding it has ever been so divided, platted and recorded, as defendant insists it has, then it fails to fall within the exception which relates only to such lots as to their entire depth as shall *front on the street to be improved,* because in our opinion the words *fronting on such street*

*to be improved,* taken in their natural and ordinary sense, do not mean adjoining such street *on the side,* but the side on which the buildings *front,* and this, the evidence shows, was Lindell Boulevard. We have reached this conclusion after a due consideration of the authorities in other jurisdictions construing the statutes on germane subjects in which the words "fronting," "adjoining," "abutting," and similar expressions are held to be synonymous, but in none of them have these different words been so carefully selected and so uniformly distinguished as they appear to be in the framing of these amendments. We can not regard these different words, "adjoining," "fronting," and "abutting," apparently so carefully differentiated with reference to their context in the charter, as merely tautological, or as synonymous. It seems to us the distinction between a lot *fronting upon a street,* and a lot having a street along its side or adjoining it, has been carefully observed in the framing of the charter.    We are not so much concerned about the strict etymological or primary signification of the words "front" and "adjoin," as we are to discern the sense in which the framers of the charter used these words, and to arrive at their intention.    Where the charter intended these words to be interchangeable or synonymous it so uses them with reference to the subject-matter.    In this charter provision we must keep in view, not merely the first exception, but the general rule and the second exception.    The general rule provided a *midway* line between parallel streets, but the framers evidently considered that the block might be laid off in lots fronting in one direction whose depth *might extend back beyond the midway line,* and so for the purposes of making an intelligent tax system, it was deemed wise to give the contractor constructing the improvement a lien upon the *whole* of such lots instead of a fraction merely.    But it is plain that the *midway* idea in drawing the district line, still prevailed, because, if the depth of the lots did not take them back to the midway, the

line was still to be drawn at the *midway in creating the district,* and only deviated when the depth of the lots took them beyond that midway line, but in neither of these cases are there any such lots *fronting* on the street to be improved.

Keeping in view the change made in the charter by which a taxing district is created over and beyond the old frontal rule and the positive provision for running the line so as to ascertain the area to be taxed, we think that the decisions construing the old charter as to the use of one or more lots as *one,* do not control as to the amendment in so far as they are designed for the establishment of taxing districts. Looking further into the charter, we find two other provisions indicating the sense of the framers of the amendments of what would be equitable in fixing the district for area taxation. "If there is no parallel or converging street on either side of the street to be improved, the district lines shall be drawn three hundred feet from and parallel to the street to be improved; but if there be a parallel or converging street on one side of the street to be improved, to fix and locate the district line, then the district line on the other side shall be drawn parallel to the street to be improved and at the average distance of the opposite district line so fixed and located."

Thus it was the opinion of the framers of the charter that only property situated within three hundred feet of the street should be considered benefited by such improvement where there were no parallel or converging streets, and if there was a parallel street on one side and none on the other, the district line on such other side should be drawn parallel to the street to be improved and at the average distance of the opposite district line so fixed and located by the parallel street. In these cases, if appellant is right in its contention, we must utterly ignore the parallel street on the east, Euclid avenue, and include the whole 817 feet of plaintiffs' property for the improvement of King's Highway Boul-

evard, and then when Euclid avenue is improved again include the whole of it for improvement of that avenue. In our opinion one of the purposes of these amendments was to obviate to some degree what was deemed the inequity of the front foot rule, but if it shall result in subjecting the whole of a block to the improvement of each of the four streets surrounding it, it would increase, instead of lessening the burden.

Recurring the definition of "lot" in the amendment: As applied to plaintiffs' property it can have no further effect than to provide that a "whole parcel of ground," when not divided into lots and a plat thereof recorded, shall be considered as one lot if such parcel had been divided into lots and a plat thereof recorded. Now if we read "whole parcel of ground" instead of "lot" into the first exception, it would be, "if the property adjoining the street to be improved is a whole parcel of ground the district line shall be so drawn as to include the entire depth of the *whole parcel of ground fronting* on the street to be improved," and still it would not be proper to draw the district line on the east side at Euclid avenue, because the said parcel or lot does not front on King's Highway.

As to the claim that this tract was divided into lots and the plat recorded, because in the partition suit portions of it were allotted in the survey and these allotments recorded with the commissioner's deed, we think it is untenable. There is no pretense that such allotment plat was approved by the Board of Public Improvements and recorded in the plat books in the recorder's office. The charter provision as to the approval and record of plats was the same under the charter before the amendments as it is now under the amendments, and the only portion of the definition that could apply under the evidence is that which refers to *recorded plats,* where the owners have disregarded the lines and treated the whole parcel as one lot, but that would not

avail defendant in these cases, as the said parcel or lot does not front on King's Highway.

Moreover, we think that the mere defining of the word "lot" in the charter should not be permitted to override all the provisions for creating a tax district otherwise so plain and susceptible of practical administration. Surely it was not intended to vary the location of the district line and thus disregard the controlling idea that only one-half of a block lying between parallel streets should be subjected to the improvement of one of the adjoining streets at a time.

To so hold would make a mere definition negative the plain purpose of the other charter provisions on this subject.

We may also properly consider the. effect and consequences of drawing the district line in these cases on the east at the western line of Euclid avenue.

This district line is drawn midway between Euclid avenue and King's Highway in block 3880, and is drawn midway in block 3881 in the north half of said block to the north of the Collier Estate property, but when it strikes the south half of 3881 or the Collier Estate going south it is deflected to the east of Euclid avenue and thus the district includes the *whole* of the Collier property, the *south* half of block 3881, and the *whole* of block 3882. In our opinion this is a misconstruction of the charter. It was not intended to tax *only one-half* of the adjoining blocks of 3881 for the improvement of King's Highway, and the whole of all blocks south of the middle line drawn east and west through block 3881. .The blocks north of that line bear exactly the same relation to the improvement of King's Highway as those south of it, and a statute ought, if possible, to receive that construction which would cause its burdens to fall equally on all in like situation.

For these reasons we think the circuit court correctly held that the district line had been improperly drawn on the east at the western line of Euclid avenue

and should have been drawn midway between Euclid avenue and King's Highway. But again, the district was erroneously established as to its western line, by making its western boundary midway between King's Highway Boulevard and Lake avenue, the latter being a private way in Portland and Westmoreland Places, instead of midway between King's Highway Boulevard and Union avenue, the street next parallel to the west of King's Highway Boulevard. It was earnestly insisted in the argument and in the briefs of appellant that Lake avenue in said Westmoreland and Portland Places is a public street within the meaning of section 14 of article 6 of the amended charter, because it says that Lake avenue has been free, open and unobstructed for more than ten years, and has been used as a street by wagons and teams. In a word, that while Lake avenue therein is not a public street, it serves all the purposes of a public street, and has been used openly and publicly ever since it was laid out more than fifteen years ago. Counsel go farther and doubt whether the law would allow property owners to plat an addition and open ways therein and allow them to be used and at the same time reserve them for the private use of the property owners in such addition, and say unquestionably the city has the right to open Lake avenue south from the north line of Portland Place to Lake avenue as laid out in Portland and Westmoreland places and counsel contend that whether a formal dedication to public use is shown or not, dedication arises by showing the street upon a plat, and its use thereafter, at least for the purpose of fixing a district boundary line and that no more is necessary in this case. But we are dealing with charter provisions, and the charter uses the word "street" and "parallel street" as the lines for fixing an area district. The word "street" therein and throughout refers to and means a public street. Lake avenue in said places is not a public street which the city has a right to improve. The title to this street is vested

by deed in trustees for the exclusive use of certain property owners. It has never been dedicated in any way to public use. On the contrary it is expressly reserved as a *private way*. It was laid out and improved for the sole use and benefit of the owners of property in Portland and Westmoreland places, and although it appears upon a plat of Forest Park Addition, it *was expressly reserved for the exclusive use of those property owners*, and the indorsement to that effect appears upon the plat. Unless we are to discard and ignore all definitions of a street, Lake avenue laid out and maintained as it is by assessments upon the owners of property in Westmoreland and Portland places, and reserved for their private use, is not a public street.

In State v. Moriarty, 74 Ind. 103, ELLIOTT, J., said: "The term 'street' does not mean private ways, nor does it apply to road or ways, owned by private corporations;" and in his work on Roads and Streets (2 Ed.), sec. 19, the same learned judge says: "It is quite safe to affirm that where a statute, or a contract, speaks of a street and does so with reference to a town or city, and there are no limiting or explanatory words, it must be taken to mean a street in the true sense of the term."

The burden of the argument of defendant is that because these private owners have permitted other citizens to walk and drive over this private way for a number of years, this permissive use constitutes a dedication.

Judge DILLON in his "Municipal Corporations" (4 Ed.), vol. 2, section 636, announces as the settled doctrine that "an intent on the part of the owner to dedicate is absolutely essential, and unless such intention can be found in the facts and circumstances of the particular case, no dedication exists." In White v. Bradley, 66 Maine 254, the court said: "But a use which is simply permissive, however long continued, or the opening of a private way, and subsequent use

of it as such, whatever the length of such by others, will not make it a public way, nor does it amount to proof of a dedication.   Everything in such cases depends upon the intention of the party whose dedication is claimed, and upon the character of the permission given and the use allowed.   And this intention must be unequivocally and satisfactorily proved.''

But in Bridge Co. v. Bachman, 66 N. Y. 261, we have a case "on all fours" with the one at bar, and the court said:  ''The only act of· dedication of any part of the street to the public use  .  .  .   was the making and filing of a plat of the ground, with the street laid down thereon, by the owner, and the sale and conveyance of lots by the plat and bounded upon the streets as delineated thereon.   But upon the maps and plats filed there was an express qualification and reservation · of rights in respect to the streets and avenues as laid down between Main street and the river, including the *locus in quo.*  .  .  .   To constitute a public highway by dedication, there must not only be an absolute dedication, a setting apart and surrender to the public use of the land by the proprietors, but there must be an acceptance and a formal opening by the proper authorities, or a user.  .  .  .   The dedication must be made with the intent to dedicate.  .  .  .   In this case the owners, by their acts and declarations, *negatived the intention* of dedicating the *locus in quo,* absolutely and irrevocably, to the public use, and thus destroyed the force and effect usually given to maps and plats of land made under similar circumstances, as evidence of an intent to dedicate or an actual dedication of the land to the public.   The maps and plans in connection with the explanatory addenda and reservation, do not show a present and actual dedication of any part of the streets and avenues west of Main street.''   [Hemingway v. Chicago, 60 Ill. 324; Speir v. New Utrecht, 121 N. Y. 420.]

Our conclusion is that Lake avenue in Westmoreland and Portland places is not a public street and that

it has never been dedicated to public use. Not being a public street it was not the next parallel street on the west of King's Highway, and the drawing of the midway line between Lake avenue in said places and King's Highway for the western line of the assessment or area district, was contrary to the charter provision on that subject, but Union avenue was and is the next parallel street on the west to King's Highway to a point on the north line of Portland place, where the same or the prolongation thereof crosses Union avenue, and the district line on the west should have been drawn midway between Union avenue and King's Highway to said point, due regard being had to the exceptions in drawing said line if they affect the same as provided in the charter. But north of the north line of Portland place, Lake avenue is a public street duly established, and is the next parallel street to King's Highway Boulevard north of the north line of Portland place, at least as far north as Delmar avenue, and accordingly the western line of the tax district should have been located midway between King's Highway and Union avenue running north from Lindell avenue to the north line of Portland place, and thence with the necessary deflection north midway between Lake avenue, as legally established as a public street, and King's Highway. We do not think it is necessary that the street parallel to the one to be improved must necessarily be parallel throughout the full length of the improvement to be made, but the district line may and must deflect accordingly as the street to be improved is paralleled its whole length or partly by one street and partly by another. It results that for this additional reason the district was improperly defined and created, and the taxbills are illegal and void.

There is no estoppel in this case. The only provision for remonstrance and objection open to the property-owner is as to "the proposed improvement" and "the kind of material and manner of construction." The plaintiffs might well have been willing and anxious

to have King's Highway improved in the manner and of the material used, and still they would have the right to object to being taxed in an unauthorized manner for such improvement. There was no time or place where they could object or have their objection heard to the establishment of the area district prior to the issuing of the taxbills. All that they demand is that this district shall be laid out and defined as the charter provides.

The judgment of the circuit court enjoining the collection of the taxbills upon the payment of the one-fourth of the front foot levy by plaintiffs is affirmed.

*Robinson, C. J., Brace, Marshall, Burgess, Valliant* and *Fox, JJ.*, concur.