STATE of Missouri ex rel. KANSAS CITY TRAILER SALES, INC., Relator-Respondent,

v.

KANSAS CITY, Missouri, and Donald R. Boyd, Water Director, Respondent-Appellant.

No. KCD 27746.

Missouri Court of Appeals, Kansas City District.

March 29, 1976.

Aaron A. Wilson, City Atty., James A. Burr, Asst. City Atty., Kansas City, for respondent-appellant.

Kusnetzky & Partin, William C. Partin, Kansas City, for relator-respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SHANGLER, Presiding Judge.

This action in mandamus seeks to compel the City of Kansas City to issue a water connection permit to the relator for business property within the municipality. The City concedes a proper application by the relator but contends the refusal of the permit was a proper exercise of discretion by the Water Director on the authority of Water Department Regulations. The peremptory writ of the trial court ordered issuance of the permit, and the City appeals.

The relator Kansas City Trailer Sales, Inc. [Trailer Sales] sells, services and stores recreational vehicles and motor homes on land which lies at the intersection of 115th Street and South U.S. 71 Highway. As part of the municipal water grid, the City owns and maintains a 12 inch water main on 115th Street which abuts Trailer Sales land. There is no water main along South 71 Highway access road which also abuts Trailer Sales land.

The relator Trailer Sales had newly removed to this site in January of 1973 and was allowed a permit by the City to build a sales building on the south portion of the 4.8 acre tract. The plans filed with the City indicated an intention to connect to the water main on 115th Street and then to run water and utility lines from the 115th Street main to the sales building. The cost of such a water line connection, by water department estimate, would have been $1000. Thereafter, in the course of construction, the City notified the relator that water department regulations required that water service be taken from a main *in front of* the property to be served, and that since the property fronted on Highway 71 access road, an easement for city water would require the installation of a main extension on Highway 71. The relator calculated the cost at more than $7000, so instead completed the sales building with a private water supply system which complied with all municipal requirements.

The relator concluded for reasons of safety and convenience to separate the service and storage functions from the sales operation, so in early 1974 planned for a service building on the northern portion of the tract. The construction was so oriented that one end of the building *faced* and opened onto 115th Street in an attempt to qualify for water service from the conduit on that street. A wide driveway connected the new building to 115th Street and was designed to accommodate the movement of these distinctive vehicles. The sales and service buildings and operations are separated by a chain link fence now in place.

Once again the relator applied for municipal water from the 115th Street main, this time to the new service facility which opened onto that thoroughfare, and once again was denied the amenity on the determination of Water Director Boyd that city regulation called for water service to be taken *in front of the property* to be served and that the frontage of the Trailer Sales tract was along the 71 Highway access road. This refusal was tempered by an offer of the Water Director to allow connection to the 115th Street main on condition that the relator install a conduit along the highway frontage. Trailer Sales rejected the offer of compromise and commenced the action in mandamus.

The trial court formulated findings of fact as predicate for the order that the City and Water Director forthwith issue authority to the relator to connect the service building to the main on 115th Street for municipal water. Our statement of facts [made without direct attribution] are agreeable to the findings of the court. We conclude with the trial court that the denial of access to the extant municipal water grid, which rests on the refusal of the Water Director to consider certain evidence and also mistakes the regulations, both abuses an administrative discretion and errs on the law.

It is the contention of the City that Water Department Regulation 1.09 [all emphases added]:

Issuance of Permits:

Permits are issued subject to a city water main being *in front of the property to be served.* If the property to be served is large enough to permit subdividing at a later date, it will be necessary for the water main *to front the subdivided property* on which *the facility to be served* is located. . . .

and Water Department Regulation 3.03:

General Installation Requirements:

All service lines shall conform to the following requirements.

a) Service connections are to be made *in front of the property to be served.*
. . .

are unambiguous that the service building is not a *property* within their meaning, but if open to doubt, Water Regulation 7.01:

The Water Department will be the sole interpreter of Water Department Regulations . . .

constitutes the Water Director as sole authority to declare the meaning and usage of the regulations, free from judicial scrutiny.

We dismiss the latter contention at once. A court is indeed bound to accord respectful consideration to the construction placed upon regulations by the administrators charged with enforcement [*Hogan v. Kansas City*, 516 S.W.2d 805, 811[6] (Mo.App. 1974)], but cannot be precluded from the pure judicial function of construction by the informal interpretation an administrator may have given an enactment or regulation. *Kroger Company v. Industrial Commission of Missouri*, 314 S.W.2d 250, 254[1, 2] (Mo.App.1958).

The findings of the trial court that the denial of the water permit for the service building was both an abuse of discretion by the Water Director and a misconception of the regulations are interrelated. In specific terms, the court found that in the determination of the *front of the property* within the meaning of the regulations, the Water Director was simply indifferent to evidence that the service building was placed in the northern portion of the tract, that it opened onto and faced 115th Street, was served by ways for ingress and egress of vehicles from and to that thoroughfare, and that for practical purposes, was separated from the sales facility by a chain link fence [then in the making, now in place, according to the parties] and thus denied access to 71 Highway.

The trial testimony of the Water Director supports the conclusion that the denial of the connection permit was neither a matter of evidence nor of informed implementation of regulation, but only the ukase of an administrator. He admitted that evidence would not have mattered, he had already "promulgated . . . that the water main extension had to be extended down 71 Highway . . . . It wouldn't have mattered where this building was situated". He had determined—but without explanation—that 71 Highway was the *front* of the tract—and 115th Street only an abutment. He gave as another basis for denial of the permission to connect that the tract lacked a fire hydrant on the 115th Street side. He admitted, however, that there was no municipal requirement for such a placement.

The contention of the City that evidence notwithstanding, the tract and not the service building [as found by the court] is the *property to be served*, rests upon the premise that, as used in the regulations *property* refers to the ground or land and *facility* to the structure. If so, that does

not answer what determines the *front* of a tract for the purpose of the water regulations. The position of the Water Director that the front of a property is what he declares it to be finds no reasonable basis in the regulations. Water Regulation 1.09 which provides [emphasis added]:

[P]ermits are issued subject to a city water main being in front of the property to be served. If the property served is large enough to permit subdividing at a later date, it will be necessary for the water main *to front the subdivided property on which the facility to be served is located* . . .

clearly intends that for the purposes of water connection that the front of a subdivided property shall be determined according to the *facility to be served*. It is conceded by the Water Director that not only was the Trailer Sales tract of sufficient size for subdivision, but that the service building stands on a subdivided portion of the tract. Accordingly, the *front* of the service building, on our view of the regulations, is determined by its placement, function and other circumstances of use of the structure.

■■ Property, in the sense of real estate, is a term gravid with meaning. As a word of legal art, the meaning includes not only the face of the earth, but everything of a permanent nature under it and over it. 73 C.J.S. Property § 7. The meanings of *property* and *front* in the regulations, however, do not depend upon the phraseology of the law, but are to be given their common usage. *Property* means any land whether bare or improved which requires municipal water for its function. *Front* means that aspect of the structure which opens onto and faces out upon the street. These usages are consistent with those found in Missouri and other cases which have defined the *front* of well defined properties. In *Collier's Estate v. Western Paving & Supply Co.*, 180 Mo. 362, 79 S.W. 947 (Mo. banc 1904), an assessment case, the natural front of the property was upon Lindell Boulevard, because [l.c. 952] "the buildings face upon that street, and the principal means of ingress and egress are by that street". In *Rombauer v. Compton Heights Christian Church*, 328 Mo. 1, 40 S.W.2d 545, 551[4] (1931), the court acknowledged that "ordinarily, when it is said a house or tract fronts on a certain street, the meaning is, facing or front side toward that street". A definition of unusual aptness to the circumstances we consider comes from *Rhinehart v. Leitch*, 107 Conn. 400, 140 A. 763 (1928):

The word *front* as applied to a city lot has little, if any, inherent application, but it takes on a borrowed significance from the building which is or may be constructed thereon. . . . As applied to a building, *"front"* in general usage refers to that side of it in which is located the main entrance. . . . When used of a lot with a house upon it, it means that portion of the lot abutting upon the street toward which the house faces.

■ The initial denial by the Water Director of permission to connect the Sales Office to the 115th Street main, although not before us, was justified by the construction we place on the water regulations. That structure faced and opened onto 71 Highway for ingress and egress and, from what the evidence shows, was oriented for use to that thoroughfare. The front of the service facility which stands on another subdivision must be determined on its own circumstances.

For the reasons already given, the evidence conclusively showed that the service facility was a *property* which *fronted* upon 115th Street, and that the relator was entitled as a matter of law to connect to the city main on that thoroughfare.

The refusal of the administrator to consider facts made known to him by the relator on the determination of the service building frontage was an abandonment of discretion and was properly corrected by the writ of mandamus which directed that, as a matter of right, a permit issue for the connection of the service facility to the municipal water main on 115th Street.

The judgment is affirmed.

All concur.